THE STATE, use of THE LEVY COURT, &c. *vs.* MERRYMAN.— June, 1826.

By the acts of 1795, *ch.* 53, and 1798, *ch.* 34, the justices of the levy courts of the several counties are authorised and required, on some day between the 1st of March and the 1st of October annually, to meet to adjust the ordinary expenses of their several counties, and to impose an assessment sufficient to defray such charges, and to appoint a collector of the same— *Held*, that the power vested in the levy courts to impose taxes is a specially delegated power, and like other specially delegated powers, must be strictly pursued; and that such court had no authority, although it met between the 1st of March and the 1st of October, to adjourn to any day beyond the 1st of October, for the purpose of completing the levy; and any tax imposed at such adjourned meeting, was without authority, and illegal; and although such tax was collected by the collector appointed for the purpose, yet an action on his bond could not be sustained for the amount so collected.

In giving judgment on a demurrer to a plea, &c. the court go to the first error.

When there are issues in law and in fact, and it appears by the judgment on the former that the plaintiff has no cause of action, it is not necessary that the latter should be tried by the jury.

APPEAL from *Baltimore* County Court. Debt by the appellant against the appellee, (the defendant in that court,) brought upon the following bond, viz. "Know all men by these presents, that we *William Merryman, John Merryman,* of *Benjamin,* and *Nicholas Merryman,* all of *Baltimore* county, in the state of *Maryland,* are held and firmly bound unto the

said state of *Maryland*, in the full and just sum of fifty-one
thousand four hundred and forty-one pounds two shillings and
sixpence, current money of the state of *Maryland*, to be paid
to the said state; to the which payment, well and truly to be
made and done, we bind ourselves, our and each of our heirs,
firmly by these presents.    Sealed with our seals, and dated this
20th day of December, 1811.    The condition of the above ob-
ligation is such, that if the above bound *William Merryman*,
as collector of the tax for *Baltimore* county, shall well and
faithfully execute his office, and the several duties required of
him by law, and shall well and truly account for and pay to the
justices of the levy court of *Baltimore* county, or their order,
the several sums of money which he shall receive or be answer-
able for by law, at such time as the law shall direct, then the
above obligation to be void, else to be and remain in full force
and virtue in law.''    The defendant prayed oyer of the bond,
and pleaded—1. That the levy court of *Baltimore* county did
not, at any time between the 1st day of March and the 1st of
October 1811, adjust, lay or impose, any county levy for *Bal-
timore* county aforesaid, agreeably to the provisions of the
act, entitled, "An act for the establishment and regulation
of the levy courts in the several counties of this state." 2.
General performance, preceded by an oyer of the bond.    *Re-
plication* to the *first* plea, that the justices of the levy court
for *Baltimore* county, between the 1st of March and 1st of
October 1811, to wit, on the 12th of March, in the year afore-
said, did convene and meet together at the court-house in the
city of *Baltimore*, in *Baltimore* county aforesaid, to adjust the
ordinary and necessary expenses of *Baltimore* county, includ-
ing an allowance for the poor of said county, and for public
roads, and for the payment thereof, with a commission for the
collection of the same, and to impose an assessment or rate, on
all property within said county, sufficient to defray the expense
of such county charges, according to the acts of assembly in
such cases made and provided; and being so convened and met
together for the purposes aforesaid, the said justices of the levy
court did then and there adjourn from time to time for the pur-
poses aforesaid, until the 20th of December, in the year afore-
said, when the said justices did, to wit, at the county afore-

said, adjust the ordinary and necessary expenses of the county aforesaid, and did impose an assessment or rate, on all property within said county, sufficient to defray the county charges, to wit, the sum of £20,095 6 3 current money, to wit, at the county aforesaid; of all which premises the said *William* then and there had notice. To this replication the defendant demurred, and the plaintiff joined in demurrer. *Replication to the second plea,* (after protesting that *W. Merryman* had not performed, &c.) that at the time of making the said writing obligatory, in the declaration aforesaid mentioned, the said *William* was appointed collector of the county charges and public assessments imposed by law on the inhabitants of said county, and duly authorised and empowered to collect and receive the same; and that before the making of the said writing obligatory, to wit, on the 20th of December 1811, at a levy court held at the city of *Baltimore*, in and for *Baltimore* county, there was assessed and levied by the justices of the levy court the sum of £20,095 6 3 current money, upon the assessable property in said county, and to be collected and paid to the said justices of the levy court, or to their order. That the said *William* then being collector of the assessments and county taxes of the said county for the year 1811, thereunto duly authorised and appointed, then and there had notice that the said sum of £25,720 6 3 current money, was assessed and levied by the justices aforesaid; and the said *William*, as collector of the assessment and taxes aforesaid, was then and there entrusted, authorised and empowered, to collect and receive the same, to wit, at the county aforesaid; yet the said *William*, the said sum of current money, or any part thereof, hath not well and truly accounted for or paid to the said justices of the said levy court, or their order, but hath wholly neglected and refused so to do; and this the said state, by its said attorneys, is ready to verify, &c. And for further breach, &c. that by an act of the general assembly of *Maryland*, begun and held at the city of *Annapolis*, on Monday, the 5th of November 1810, entitled, "An act authorising the raising of a sum of money to complete the court-house, and to erect a watch-house in the city of *Baltimore*," it was, amongst other things, enacted, "that the levy court of *Baltimore* county be and they are hereby authorised

and required, to assess and levy upon the assessable property of said county, in such successive annual instalments, any sum not exceeding $20,000 annually, as they may from time to time think proper, as well for the payment of any debts or expenses heretofore contracted or incurred, as for the raising such sums as may be hereafter necessary for the finishing and completing the new court-house in the city of *Baltimore;* the first instalment to be assessed by the said court at their first session after the passage of the said act for the purpose of laying the county levy, and the same to be collected by the collector of said county." That after the passing of the said act, and before the making of the said writing obligatory, at a levy court held next after the passing of said act for the purpose of laying the county levy, to wit, at a levy court held at the city of *Baltimore,* in and for *Baltimore* county aforesaid, on the 20th of December 1811, there was assessed and levied, for the purposes in the said act mentioned, as before stated, by the justices of the levy court for *Baltimore* county aforesaid, the sum of £5,625 current money, to be collected from the assessable property of said county, pursuant to the directions of the said act. That at the time of making the said writing obligatory, the said *William* was duly authorised to collect the assessment and county taxes of said county for the year 1811, and then and there had notice that the said sum of £5,625 current money, was assessed and levied by the said justices for the purposes aforesaid; and the said *William,* as the collector of the assessments and taxes as aforesaid, was then and there, by virtue of the act of assembly aforesaid, authorised and empowered to collect and receive the said sum of money last mentioned, to wit, at the county aforesaid; yet the said *William,* the said sum of current money, or any part thereof, hath not well and truly accounted for and paid, &c. The defendant rejoined to the *second* replication— that as to the *first* breach in the said replication alleged, as consists in not accounting for and paying to the justices of the levy court as aforesaid, or their order, the sum of £20,095 6 3, stated to have been assessed and levied by the said justices of the levy court upon the assessable property of said county, that said state its action aforesaid thereof against him ought not to have and maintain; because he saith that he the said *William,*

the said sum of £20,095 6 3, to them the said justices of the levy court, or their order, before the impetration of the original writ in this action, did well and truly account for and pay over, to wit, at the county aforesaid; and of this he puts himself upon the country, &c. Issue joined. And as to so much of the *second* breach, in said replication alleged, as consists in not accounting for and paying to the said justices of the levy court, or their order, of the sum of £3,750, part of the said sum of £5,625, so as aforesaid stated to have been assessed and levied by the said justices of the levy court upon the assessable property of said county, that the said *William*, the said sum of £3,750, to them the said justices of the levy court, or their order, before the impetration of the original writ in this action, did well and truly account for and pay; and of this he puts himself upon the country, &c. Issue joined. And as to so much of the said *second* breach, as consists in not paying to said justices of the levy court, or their order, the sum of £1,875, the residue of said sum of £5,965, so as aforesaid suggested to have been levied by the said justices of the levy court upon the assessable property of said county, that the said justices of the levy court did not, at a levy court held for the purpose of laying the county levy next after the passing of the said act of assembly, entitled, "An act authorising the raising of a sum of money to complete the court-house and erect a watch-house in the city of *Baltimore*," assess and levy the said sum of £5,625 current money, upon the assessable property of *Baltimore* county; and this he is ready to verify, &c. There was a general demurrer by the plaintiff to the rejoinder to that part of the *second* breach alleged in the replication as last above mentioned, and joinder in demurrer. The county court sustained the demurrer to the replication to the *first* plea, and overruled the demurrer to the rejoinder to the latter part of the *second* breach alleged in the replication to the *second* plea; and rendered judgment to the defendant; and the plaintiff appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, and DORSEY, J.

*Heath* and *R. Johnson*, for the Appellant, contended—1. That for the purpose of assessing and levying the county tax,

it was sufficient for the levy court to convene between the 1st of March and the 1st of October, and proceed with the business entrusted to it; and that having so done, they had the power to adjourn from time to time, until the 20th of December, and then to lay the assessment or levy. 2. That the levy court, so convening in March, and having the power or right to adjourn from time to time, and having adjourned from time to time to the 20th of December 1811, and then imposed the sum of £5,625 upon the county for completing the new courthouse, substantially complied with the provisions of the act of 1810, *ch.* 168. 3. That the court below erred in taking the decision of the issues in fact from the jury, and in deciding them itself.

To show that the justices of the levy court, having met between the 1st of March and the 1st of October annually, for the purpose of adjusting the ordinary and necessary expenses of their county, might adjourn from time to ˙ time after the 1st of October, and complete the levy, they referred to the acts of 1794, *ch.* 53, *s.* 1, 9, and *ch.* 10, *s.* 3; and 1798, *ch.* 34, *s.* 5. They contended, that the cases of *Ellicott, et al. vs. the Levy Court, &c.* 1 *Harr. & Johns* 36, and *Quynn vs. The State, use of Pue, et al. Ibid* 359, did not affect this case.

The second rejoinder, which alleges that the defendant paid over a part of the sum levied, and as to the residue, viz. the whole amount, states that there had been no levy made, was inconsistent, and no answer to the replication.

If it is objected that there is no averment in the replication that the defendant was appointed collector, and that he accepted, &c. it may be answered that that fact is not denied in the plea, and therefore need not be averred.

*Williams,* (District Attorney of *U. S.*) and *Mitchell,* for the Appellee. There were four issues in this case, two of law, and two in fact. The issues in fact were not noticed by the court, nor was it necessary to notice them, the whole ground having been disposed of by the decision on the issues in law. *Lawe vs. King,* 1 *Saund.* 80, *(note* 1.) *O'Brien, et ux. vs. Hardy,* 3 *Harr. & Johns.* 434. *Chapman vs. Dixon's Adm'x.* 4 *Harr. & Johns.* 527. And 1 *Chitty's Plead.* 647. They contend-

ed—1. That the replications were defective in not averring that the defendant was appointed collector of the county, that he accepted, took the oaths, and gave bond as required by law. 2. The bond was defective in not being, according to the *formula* prescribed by the act of 1794, *ch.* 53, and in being more than double the amount of the assessment imposed and to be collected. 3. That it was a *joint* and not a several bond. It was joint as to the obligors, but several as to their heirs; and the action is brought in *severalty* against one of the obligors. *Gordon vs. Austin,* 4 *T. R.* 611. *South vs. Tanner & Jones,* 2 *Taunt.* 254. The demurrer of the defendant to the *first* replication extends to this defect of suing a *joint* as a *several* bond. 4. The demurrer to the *first* replication is rightly decided in favour of the defendant, because the act of 1794, *ch.* 53, *s.* 1, requires that the levy should be completed between the 1st of March and the 1st of October in the year. *Ellicott, et al. vs. The Levy Court, &c.* 1 *Harr. & Johns.* 359. *Quynn vs. The State, use of Pue, et al. Ibid* 36. The acts of 1794, *ch.* 10, and 1793, *ch.* 43, have nothing to do with the question, those acts having been repealed by that of 1794, *ch.* 53. It was necessary that the levy court should complete the duties imposed on them before the month of November, as, under the constitution, new justices might then be appointed. The authority of the court was a special one, and ought to have been strictly pursued. *Kerr, et al. vs. The State, use of Levy Court, &c.* 3 *Harr. & Johns.* 560. 5. The plaintiff's demurrer to the *second* rejoinder was properly overruled. The act of 1810, *ch.* 168, relative to the new court house, required the levy to be made at the first session of the levy court, (which is shown to have been on the 12th of March,) and it was only made on the 20th of December following; and further, the act of 1794, *ch.* 53, directs the court to meet between the 1st of March and 1st of October annually. The demurrer admits the fact that the court did not meet at the time required; and if they did not so meet, they cannot sustain the action. The act of 1817, *ch.* 22, shows what construction ought to be given to the act of 1794, *ch.* 53. The first act for building the court-house passed in 1805, *ch.* 91. This act required that the bond of the collector should be given to the levy court, and that the mo-

ney levied should be paid to the commissioners appointed to superintend the building. The acts of 1808, *ch.* 75, and 1809, *ch.* 196, contain similar provisions; but the act of 1810, *ch.* 168, repeals those acts, and makes no provision respecting the collector's bond, or to whom the money levied is to be paid. 6. The act of 1794, *ch.* 53, provides, that in case of an action brought on the collector's bond, an attested copy should be produced in evidence. Here the action is brought on a bond not proved to be the original, nor is it an attested copy.

The *second* breach in the replication to the plea of performance was insufficient, as there was no averment that the object of the assessment was that required by the act of 1810, *ch.* 168, which was an extraordinary assessment, and not required by the act of 1794, *ch.* 53. It was a special power delegated to the levy court, which ought to have been strictly pursued. The necessity of the object in laying the levy is omitted in the replication. The bond is, that the collector shall pay such sum as he shall collect; and the replication does not aver that any money was received by the collector. The same objection is applicable to the replication to the *first* plea. In that replication there is no breach at all that the collector collected the money, and did not pay it over. That such averments were necessary, they referred to 5 *Bac. Ab.* tit. *Obligation,* 172. *Cornwallis vs. Savery,* 2 *Burr.* 773. *Lord Arlington vs. Merricke,* 3 *Saund.* 411, *(note.)* *Shum vs. Farrington,* 1 *Bos. & Pull.* 640. 1 *Chitty's Plead.* 398. The bond is not *exactly* in double the amount of the sum levied. *Smith vs. Jansen,* 8 *Johns. Rep.* 111. The rejoinder to the *second* replication is payment in part, and no legal levy as to the residue. This is partly a question of fact, and partly a question of law; and may be pleaded as two distinct facts. If the matter is badly pleaded as to the fact, but is good as to the residue, and the demurrer goes to the whole, it cures the defect as to the fact pleaded. Instead of demurring to the whole, the plaintiff should have taken issue on that part as to the fact, and demurred to the residue. 5 *Com. Dig.* tit. *Pleader,* (C 85,) 378, pl 2. *Ibid* (C 32.) *Co. Litt.* 304. 1 *Chitty's Plead.* 260. *Pinkney vs. The Inhabitants of,* &c. 3 *Saund.* 379, 380. No action of *debt* could be brought on the bond

against the defendant *alone.* There should have been a joint *scire facias* on the bond against the principal and sureties, and not an action of debt, as directed by the act of 1794, *ch.* 53, *s.* 2, like a *scire facias* on a loan office bond, as directed by the acts of 1769, *ch.* 14, *s.* 12, 13; 1773, *ch.* 26, *s.* 9, 10; 1780, *ch.* 24; 1781, *ch.* 23; 1784, *ch.* 55; and 1785, *ch.* 83, *s.* 11, *ch.* 74, *s.* 6. Here was a new power created—a new tribunal erected upon a new subject matter, with exclusive authority to proceed in a particular form of action. No other mode can be adopted than the one prescribed. In the case of heirs and devisees under the statute of *W & M. ch.* 14, as that statute directs heirs to be joined, in debt on bond, it is necessary both in law and equity. *Gawler vs. Wade,* 1 *P. Wm.* 99. *Wilson vs. Knubley,* 7 *East,* 128. 1 *Chitty's Plead.* 39, 40. 2 *Chitty's Plead.* 160, *(note.) Jefferson vs. Morton,* 2 *Saund.* 7, *(note 4.)* Bac. *Ab.* tit. *Heir,* (F.) *Vin. Ab.* tit. *Heirs & Devisees,* (Z.) *Warren vs. Stawell,* 2 *Alk.* 125. But whether it be an action of debt or a *scire facias,* it must be jointly against the principal and sureties. *Cabell vs. Vaughan,* 1 *Saund.* 291, (*note* 4.) The time of meeting of the levy court is stated in the *second* replication to be in December, and nothing is said about an adjournment of the court. If the time was material at all, then the meeting, as here stated, was not at the period prescribed by law. October 1780, *ch.* 26; 1790, *ch.* 33, *s.* 2, 9; 1791, *ch.* 61; 1793, *ch.* 46; 1794, *ch.* 10. The last act, *section* 3, is restricted in the preamble to particular counties. *Fisher vs. Blight,* 2 *Cranch,* 400. 6 *Bac. Ab.* 381. Where time is prescribed it must be adhered to. The day is material. *The King vs. The Mayor and Burgesses of Tregony,* 8 *Mod.* 111, 112. *The King vs. The Commissioners of Sewers, &c.* 2 *Ld. Raym.* 1479. S. C. 2 *Stra.* 763. *Doe vs. Milborne,* 2 *T. R.* 721. *Taylor vs. Horde,* 1 *Burr.* 60. 6 *Com. Dig.* tit. *Power,* (C 6,) (B 3;) *Rex vs. The Inhabitants of Polsted,* 2 *Stra.* 1263. *Rex vs. Fisher, Ib.* 865. *Rex vs. Inhabitants of Haughton,* 1 *Stra.* 83. 4 *Com. Dig.* 672. *Dakin's* case, 3 *Saund.* 291. The levy lists are to be transmitted to the general assembly in November, which shows that the levy must be completed before November.

BUCHANAN, Ch. J. delivered the opinion of the court. By the *first* section of the act of 1794, *ch.* 53, and the *third* section of the act of 1798, *ch.* 34, the justices of the levy courts of the several counties of the state, are "authorised and required, on some day between the first of March, and the first of October annually, to meet at the court-house of their respective counties, to adjust the ordinary and necessary expenses of their several counties, &c. and to impose an assessment, &c. sufficient to defray such charges;" "and to appoint a person or persons to collect the same." And by the *first* section of the act of 1810, *ch.* 168, the levy court of *Baltimore* county, was authorised and required to assess and levy, in successive annual instalments, not exceeding twenty thousand dollars annually, such sum as should be necessary, among other things, for completing the new court-house in the city of *Baltimore*; "the first instalment to be assessed at their first session (after the passage of that act,) for the purpose of laying the county levy, and to be collected by the collector of the county."

*William Merryman*, the defendant, was appointed by the levy court collector of the taxes for *Baltimore* county, and on the twentieth of December, in the year 1811, gave his bond to the state as such, on which bond this suit was instituted. After craving and obtaining oyer of the bond, he pleaded, 1st. That the levy court of *Baltimore* county did not, at any time between the first of March and the first of October, in the year 1811, impose any county levy for *Baltimore* county, agreeably to the provisions of the act of 1794, *ch.* 53. And 2d. General performance. The replication to the *first* plea alleges, that the justices of the levy court of *Baltimore* county did meet at the court-house in the city of *Baltimore*, between the 1st of March and the 1st of October, in the year 1811, to wit, on the 12th of March, to adjust the ordinary and necessary expenses of *Baltimore* county, &c. according to the acts of assembly, &c. and for that purpose adjourned from time to time, until the 20th of December 1811, when they adjusted the ordinary and necessary expenses of the county, &c. and imposed a tax sufficient to defray the county charges, of £20,095 6 3, of which the defendant had notice, &c. To which there was a demurrer by the defendant, and joinder in demurrer.

The replication to the *second* plea, (the plea of performance,) alleges—*First*. That at the time of executing the bond, the defendant was appointed collector of the county charges of *Baltimore* county; and that before the making of the bond, to wit, on the 20th of December 1811, at a levy court held in the city of *Baltimore*, there was assessed and levied, &c. the sum of £20,095 6 3, to be collected and paid to the justices of the levy court, or their order, of which the defendant had notice, and which, as collector of the taxes, he was duly entrusted and empowered to collect; and assigns for breach, that he has not well and truly accounted for or paid to the justices of the levy court, or their order, the said sum of money, or any part thereof, &c. And *secondly*—After reciting so much of the act of 1810, *ch.* 168, as authorises and requires the levy court of *Baltimore* county to impose a tax for completing the new court-house, alleges, that before the making of the bond, at a levy court held for the purpose of laying the county tax, &c. next after the passing of that act, to wit, on the 20th of December 1811, there was assessed and levied, for the purposes mentioned in that act, the sum of £5,625, of which the defendant had notice; that he was, at the time of making the bond, duly authorised to collect the county taxes; and that as collector of the county taxes he was authorised and entrusted to collect the tax imposed in virtue of the act of 1810, *ch.* 168; and assigns for further breach, that he has not well and truly accounted for and paid to the justices of the levy court, or their order, the last mentioned tax, or any part thereof, &c. Issue was joined on the *first* breach assigned in the replication to the plea of performance; and as to the *second* breach, the defendant rejoined payment of a part of the sum of £5,625, alleged to have been assessed and levied, &c. and as to the residue of that sum, that the justices of the levy court did not, at a levy court held for the purpose of laying the county levy, next after the passage of the act of 1810, *ch.* 168, assess and levy the said sum of £5,625, &c. to which there was a demurrer, and joinder in demurrer.

The judgment of the court below was against the plaintiff, the appellant here; and the material question presented for consideration is, whether the justices of the levy court of *Balti-*

*more* county could legally, and within the scope of their autho-rity, impose a tax either for defraying the ordinary expenses of the county, or for completing the court-house, at any time ex-cept between the first day of March, and the first day of Oc-tober annually? It has been urged in argument, that indepen-dent of the necessity of the thing, the *fifth* section of the act of 1798, ch. 34, which entitles each of the justices of the levy court to a compensation for his services, "for every day he shall attend to the duties of his office," clearly recognizes their pow-er to adjourn from day to day; and that express authority is given by the *third* section of the act of 1794, ch. 10, to the jus-tices of the levy courts throughout the state, to adjourn their respective courts from time to time, at their discretion, for the purpose of laying the levy; and therefore, that they are not bound by the act of 1794, *ch.* 53, to make the levy between the 1st of March and the 1st of October, but may adjourn to any time beyond the 1st of October for that purpose.  It cannot be doubted that the respective levy courts may be adjourned from day to day; and it may also be admitted, that the enacting clause of the *third* section of the act of 1794, *ch.* 10, authoris-ing, in the language of that clause, "the justices of the levy courts of the several counties of this state, to adjourn their re-spective courts from time to time, for the purpose of laying the levy, as they may think necessary," does extend to the le-vy courts of all the counties in the state, though the preamble relates only to particular counties; yet that does not obviate the objection to the proceedings of the levy court of *Baltimore* county, as exhibited in the pleadings in this cause.  Before the act of 1794, *ch.* 53, particular times were fixed by law for the meeting of the justices of the levy courts of the several coun-ties, but there was no time prescribed within which the levies were to be made; and supposing the enacting clause of the *third* section of the act of 1794, *ch.* 10, to extend to all the counties in the state, they might, in their discretion, have adjourned from time to time, to any time within the year, there being no other limit.  But it was thought necessary by the legislature to make an alteration in this respect; and accordingly by the act of 1794, *ch.* 53, the levy courts of the respective counties of the state are required to meet, in the words of the law, "on some day between

the first day of March and the first day of October annually, to adjust the ordinary and necessary expenses of their respective counties, and to impose an assessment," &c.   If it was not the intention of the legislature that the assessment should be imposed before the 1st of October, it was unnecessary to restrict the meeting for that purpose within those limits, and would have been sufficient to direct the meeting to be on some day after the first of March, leaving the levy courts at large to adjourn, in their discretion, to any time within the year, as before, if such discretionary power was meant to be vested; but the confining the meeting to impose the assessment to a time between the first of March and the first of October, shews it to have been the intention of the legislature, that it should not be imposed after the first of October, and restrains the power of adjournment beyond that time, which before had no limit within the year.   No other construction can well be given to that act.   The space between the first of March and the first of October annually, is the time allotted to the justices of the several levy courts for imposing the respective levies, and they are not authorised to meet for that purpose at any time after the first of October; but the meeting, whether by adjournment or otherwise, at which the assessment is imposed, is required to be within the limits so prescribed, with no other restriction, or any power of adjournment, that may have before existed, than the merely confining the exercise of it within those limits.   The latitude allowed between the first of March and the first of October, assists in showing the intention of the legislature, and the restricting the authority to impose the assessment, to the first of October, was necessary for the purpose of giving time to the collectors to make their collections.

The power vested in the levy courts to impose taxes, is a specially delegated power, and like other specially delegated powers, must be strictly pursued; which does not appear to have been done in this case.   The replication to the *first* plea alleges, that the justices of the levy court of *Baltimore* county met on the 12th of March 1811, adjourned from time to time until the 20th of December 1811, when they imposed the tax to defray the ordinary county charges; which adjournment to the 20th of December, and meeting of the levy court on that day,

being both without authority, the imposing the tax was illegal, and the replication shows no cause of action in the appellant; the demurrer therefore was properly sustained.

As to the replication to the plea of performance, the allegation, both as respects the imposing the tax, which is stated to have been laid for defraying the ordinary county charges, and the tax for completing the court-house is, that it was done at a levy court held on the 20th of December 1811, without stating it to be by adjournment, or that there had been any meeting for that purpose, by the justices of the levy court, between the 1st of March and the 1st of October. And as it is perfectly clear, that the justices of the levy court had no authority to meet for the first time, for the purpose of imposing the county levy on the 20th of December, or at any time after the 1st of October, their proceedings, as set out in that replication, were wholly illegal. The replication, therefore, shows no sufficient cause of action; and as the demurrer to the rejoinder carried the court up to the first defect, the demurrer was properly determined in favour of the defendant, no matter how defective the rejoinder may be.

There is nothing in the objection, that the issues in fact were taken from the jury, and decided by the court; the demurrers being determined in favour of the defendant, and it appearing upon the whole that the plaintiff had no cause of action, the court did right in giving judgment for the defendant.

There were several questions raised in argument on points of special pleading, which, under the view that has been taken of the case, it is not thought necessary to examine.

JUDGMENT AFFIRMED.