STATE TAX COMMISSION OF MARYLAND ET AL.
*v.*
ARMCO STEEL CORPORATION

[No. 100, September Term, 1961.]

*Decided October 20, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, HORNEY and MARBURY, JJ.

*Ambrose T. Hartman, Deputy City Solicitor,* with whom
were *Thomas B. Finan, Attorney General, Lawrence F.
Rodowsky, Assistant Attorney General,* and *Harrison L.
Winter, City Solicitor,* on the brief, for the appellants.

*John Henry Lewin* and *Robert M. Thomas,* with whom
were *Venable, Baetjer* and *Howard* on the brief, for the ap-
pellee.

HAMMOND, J., delivered the opinion of the Court.

Presented for decision is whether in December 1959 the Mayor and City Council of Baltimore could subject to taxation for 1958 and 1959 tangible personal property which this Court had held was exempt under the terms of the ordinances in effect on the dates of finality for those years, by ordaining that the earlier ordinances had not intended what we said they had intended. The question arises on a claim for refund of taxes paid for those years by Armco Steel Corporation, appellee. The appeal is by the City from the decree and order requiring the refunds.

By Ordinance No. 643, approved December 5, 1956, the Mayor and City Council of Baltimore repealed the municipal tax exemption of certain personal property which manufacturers in the City had enjoyed since 1881. Section 4 of the ordinance continued the exemption in favor of "ores and unrefined metals shipped into the City for processing or refining purposes, and metals derived therefrom in the hands of the refiner * * *."

The City concedes (as it has from the time the ordinance was passed) that this was an *ad hoc* exemption passed after the Council had been persuaded that the American Smelting and Refining Company, unless exempted, would close its plant, to the tax loss and economic detriment of the City. The Council had been told that almost all of American's business was the refining to a pure state of copper which belonged to others located out of Maryland, and that if such copper were taxed, American could not afford to pay the tax and the owners, if they had to pay, would not ship into Baltimore but would send the copper to plants in other States where there was no similar tax.

To say clearly just what is intended, and no more and no less, is as difficult in the drafting of legislation as in the writing of a judicial opinion, and the consequences of failure in the effort may be more momentous—and less easy to correct —in the legislative branch than in the judicial. This has already become painfully apparent to the City and its awareness of these disagreeable truths will not be lessened by our views on this appeal.

Armco believed itself to be within the exemption intended for American Smelting, and asserted its claim to exemption for the year 1957 as to some thirteen millions of a fourteen million dollar assessment. The State Tax Commission and the Circuit Court of Baltimore City upheld the contention of the City that the exemption continued by Ordinance No. 643 was limited to ores and unrefined metals in the hands of a refiner which were owned by another, and then only when the refining resulted in a fine, unmixed and pure product not containing other metals and compounds (a definition tailored to describe American Smelting), and that Armco was without the exemption since it owned the ores and metals it processed and did not end up with the required pure product. In *Armco Steel v. State Tax Comm.*, 221 Md. 33, the holdings below were reversed. It was decided that Ordinance No. 643 did not say that the ores and unrefined metals had to be owned by another to be exempt, and words would not be read into the statute; it was further found that the term "processing" used in the ordinance must be given effect. We said: "[I]t thus appears that while the Ordinance was intended to exempt only those processors engaged in a refining operation as to metal it was also intended to include those who not only refined metals but also subjected them to a process that would not be considered part of the refining." *Id.* at 44.

The *Armco* case was decided on November 24, 1959. Ordinance No. 156 was introduced in the Council on December 9 and passed December 18, 1959. Section 1 recited the *Armco* decision by the Court of Appeals, the interpretation of the State Tax Commission that only non-owning refiners producing a pure product were exempted by Ordinance No. 643, and then said: "In view of the foregoing, it is the intent of the Mayor and City Council of Baltimore by this Ordinance to ratify and confirm the interpretation by the State Tax Commission of the scope of the exemption as explained in subparagraph (c) hereof." Section 2 ordained that for the period from January 1, 1958, through December 31, 1958, the exemption granted by Sec. 4 of Ordinance No. 643 "shall be and is hereby deemed to have provided as follows":

"* * * And provided, further, that ores and unrefined metals shipped into the City for refining by others than the owners thereof, and the metals derived therefrom, while the said ores and unrefined metals, and metals derived therefrom, are in the hands of the refiner, shall be exempt from assessment and taxation for all ordinary municipal purposes. The term 'refining', as used herein, means the reduction of ores and unrefined metals to a fine and pure state, unmixed and not alloyed with other metals or compounds."

Section 3 in identical language "deemed" that Ordinance No. 1340, approved April 7, 1958 (which had reordained for 1959 the exemption granted by Ordinance No. 643, in identical words), had meant and intended for the period from January 1, 1959, through December 31, 1959, what Section 2 said Ordinance No. 643 had meant and intended for 1958.

Armco had claimed exemption for the year 1958 and the State Tax Commission, the assessing agent for both the State and the City, had rejected its claim and entered a full assessment. Since the legal issues were identical and the property involved similar, the Executive Secretary of the Commission wrote counsel for Armco on June 30, 1958, as follows:

"If you will waive the hearing in the 1958 assessment and file your appeal in Court within the 30 day period described, we will agree to let the 1958 appeal lay dormant until the final determination by the Court of the 1957 appeal, and then dispose of both appeals *in accordance with* the Court's ruling in the 1957 matter." (Emphasis added.)

The offer was accepted by Armco's counsel by a letter dated July 10, 1958.

Ordinance No. 643 was repealed by Ordinance No. 1340, approved April 7, 1958, effective December 31, 1958. The new ordinance reinstated by stages the old general manufacturers' exemption (exempting 25% in 1959, 50% in 1960, 75% in 1961). In face of Armco's well-publicized claim in the courts to the exemption granted by Ordinance No. 643,

the Council, as we noted above, used the same language in Ordinance No. 1340 as it had used in Ordinance No. 643 in enacting a one hundred per cent exemption for ore and metal refiners.

In 1959 Armco again claimed exemption, this time under the language of Ordinance No. 1340, and again its claim was rejected and 75% of its personal property fully assessed by the State Department of Assessments and Taxation, the then successor to the administrative functions of the State Tax Commission. Thereupon, the same arrangement was made to postpone an appeal as to the 1959 assessment to the Maryland Tax Court as had been made to postpone the 1958 appeal to the Circuit Court—both were to lie dormant and await, and be determined by, the decision of the Court of Appeals as to the 1957 assessment.

Following our decision in *Armco* in November 1959, the 1959 assessment appeal was heard by the Maryland Tax Court, which held that Sec. 3 of Ordinance No. 156 was not a valid enactment "inasmuch as it merely construes that which had otherwise been authoritatively construed by the Court of Appeals of Maryland. It attempts to state the law to be otherwise than determined by the Court of Appeals in the *Armco* case, *supra,* and therefore violates Art. 8 of the Maryland Declaration of Rights." The City appealed to the Baltimore City Court which Code (1960 Supp.), Art. 81, Sec. 229 (1), had made the appellate forum. By agreement of counsel both the 1958 and the 1959 appeals were heard together in the Circuit Court. Judge Sodaro held Ordinance No. 156 ineffective to subject Armco's property to taxation for 1958 and 1959 for almost all, if not all, the reasons and arguments advanced by it, and ordered the claimed refunds.

With a dutiful deference for the importance and significance of the litigation—Armco, if successful, will receive in refunds some $800,000, and there are fifteen other taxpayers whose rights to refunds larger in total may depend on the outcome of this appeal—both sides have made complete and thoughtful arguments, printed and forensic, in support of their contentions.

The City says and Armco denies: that the retroactive pro-

visions of Ordinance No. 156 are valid on the theory of ratification of an act of an agent done without prior authority from the principal, or on the theory of permissible taxation of recent transactions; that the retroactive features of the ordinance do not offend the due process clause of the Fourteenth Amendment to the Constitution of the United States nor the doctrine of legislative usurpation of judicial function prohibited by Art. 8 of the Declaration of Rights of the Constitution of Maryland; that the classification made by Ordinance No. 156 is a reasonable one and violates neither the equal protection clause of the Fourteenth Amendment to the Constitution of the United States nor Articles 15 and 23 of the Maryland Declaration of Rights; and, finally, that Baltimore City has the delegated power to impose and levy an *ad valorem* tax on personal property, effective as of a prior tax year.

The respective points of view have been ably presented and are interesting, but we find no need to decide any but the last because we have concluded, as a matter of statutory construction, that the City had no power in December 1959 retroactively to subject to tax tangible personal property which previously was exempt.

*The Baltimore City Charter* (Flack, 1949 ed.) provides in Sec. 56 that "the valuation of the property subject to taxation by Baltimore City, as it shall appear upon the assessment records * * * on the first day of October in each and every year shall be final and conclusive, and constitute the basis upon which taxes for the next ensuing fiscal year shall be assessed and levied * * *." The October 1 date of finality has been changed to the following January first by Code (1957), Art. 81, Sec. 31 (c), which provides:

"All State, county and/or city taxes required to be levied upon assessments made by the State Tax Commission, and all State, county, municipal and other local taxes on tangible personal property by whomsoever assessed, shall be levied for the calendar year and as of the first day of January of such year as the date of finality."

This was flatly decided by *Kimball-Tyler v. Balto. City*, 214 Md. 86, 97-9. Section 2 (20) of Art. 81 defines date of finality to mean "the date as of which taxes are to be levied for the taxable year in question and upon which assessments become final for such year, subject only to correction as herein authorized." The authorized corrections relate to assessable but escaped property (Sec. 34 of Art. 81), and to corrections necessary because of disposition, acquisition or omission of property since the last assessment (Secs. 38 and 39 of Art. 81).

Property which was exempt on the date of finality is not subject to tax for the ensuing taxable year. In *Baltimore City v. Jenkins*, 96 Md. 192, it was held that property owned by a church on October 1, the then date of finality, and so tax exempt, and which was sold to business interests in November, was not taxable for the next year. The Court said:

> "Here, on October first, 1901, the property in question was not, and could not rightfully have been, upon the assessment books, either as the property of the committee of the Baptist Church, or of the appellee. * * * it was then exempt from taxation, and had no legal existence for the purposes of taxation. * * *
>
> "No property, other than corporate property not subject to taxation on October first in each year, can enter into the taxable basis for the ensuing fiscal year, though it become subject to taxation on the next day." (*Id.* at 194-5.)

It was said in *Hopkins v. Van Wyck*, 80 Md. 7, 15, that the purpose and function of a date of finality is to designate "some definite period * * * as the point of time, in each year, when the valuation or appraisement fixed upon the property actually assessed and charged upon the books to each individual * * * would be conclusively ascertained and made binding upon both the City and the taxpayer alike."

*Kimball-Tyler v. Balto. City, supra,* upheld Ordinance No. 643 against the contentions of certain exempt manufacturers that the City had no power to repeal the manufacturers' ex-

emption and that, if it had, the Ordinance was ineffective for the year 1957 because it was passed after October 1, 1956, which, it was claimed, was the City's date of finality for the tax year 1957. It was decided that the date of finality was not October 1 but the following January 1, because the State-wide statute, which was (and is) codified as Code (1957), Art. 81, Sec. 31 (c), was applicable to and binding on the City. The opinion said the question was merely one of statutory construction, "for the power of the legislature to repeal a public local law by the passage of a subsequent public general law is beyond question." *Id.* at 99. The January first date of finality was imposed by the Legislature in order to establish a uniform State-wide date for all assessments on tangible personal property, by whomsoever made. See "Report of the Legislative Council to the General Assembly of 1947," p. 215; and *County Treas. v. State Tax Comm.,* 219 Md. 652, 654.

The property for which Armco claims exemption was not levied on for either 1958 or 1959. In December 1957 and December 1958 the annual ordinances of levy (Nos. 1140 and 1745 respectively) were passed. In each case the rate for the ensuing year was "levied and imposed on every One Hundred Dollars of the assessed or assessable value of property in the City of Baltimore." The property so levied on for 1958 and 1959 respectively was property assessed or assessable on January 1 of that year.

Armco's property was neither assessed nor assessable on either January 1, 1958, or January 1, 1959—in the words of *Baltimore City v. Jenkins, supra,* it then "had no legal existence for the purposes of taxation" and could not "enter into the taxable basis for the ensuing fiscal year." It had been exempt prior to the passage of Ordinance No. 643 and continued to be exempt for 1958 under the terms of that Ordinance and for 1959 under the identical terms of the successor Ordinance No. 1340, as the decision of this Court read them.

The State-wide requirement that municipalities, including Baltimore, must make annual, and not retroactive, levies is shown by the statutes and the cases. Not only does Sec. 56 of the Baltimore City Charter establish a date of finality

(which under Sec. 31 (c) of Art. 81 of the Code is now January 1 of the tax year), it provides that the property list as of the date of finality "in each and every year, shall be final and conclusive" and the basis upon which taxes for the year "shall be assessed and levied." Section 6, and subsection (33) thereof, of the City Charter specify and require an annual levy as follows:

"The Mayor and City Council of Baltimore shall have full power and authority to exercise all of the powers heretofore or hereafter granted to it by the Constitution of Maryland or by any Public General or Public Local Laws of the State of Maryland; and in particular, without limitation upon the foregoing, shall have power by ordinance, or such other method as may be provided for in its Charter, subject to the provisions of said Constitution and Public General Laws:

\* \* \*

"(33) TAXES. To assess for tax purposes, levy annually and collect taxes upon every description of property found within the corporate limits of the City which the City is authorized by law to levy tax upon for the purpose of defraying the expenses of the municipal government \* \* \*."

Section 34 of the Charter of the City directs the Board of Estimates, as soon as practicable after October 1 in each year, to send to the City Council, with the Ordinance of Estimates, a report of next year's taxable basis and the amount of revenue reasonably to be expected therefrom, as well as a statement of expected expenditures for the next year and the total income which reasonably can be anticipated for that period, and the difference between estimated expenditures and receipts, and a statement of a levy rate sufficient to balance the budget. It then provides:

"The ordinance making the annual levy of taxes, which ordinance shall be passed in the month of November in each year and as soon as practicable after

the passage of the Ordinance of Estimates, shall fix a rate of taxation not less than the rate stated in the aforesaid report * * *."

*Cf. Liss v. Goodman,* 224 Md. 173.

Code (1957), Art. 81, Sec. 32, headed "County and municipal levies * * *" provides:

"As soon as may be practicable after the date of finality in each year and in any event before the first day of the fourth succeeding month the county commissioners of each county and the legislative department of the mayor and city council of Baltimore or any other city shall fix the rate of county or city taxation for such ensuing year on all assessments, persons or property subject to taxation under this article in such county or city and for which the rate is not fixed by this article * * *."

Tangible personal property, the kind under scrutiny here, is a kind on which Sec. 8 of Art. 81 imposes taxes unless it is exempted under the succeeding Sec. 9.

Although the General Assembly, as Sec. 32 spells out, may itself direct a continuing levy (as in *Union Trust Co. v. State,* 116 Md. 368; and *Casey Dev. Corp. v. Mont. County,* 212 Md. 138), it is clear that if it has not, as is true in the case of tangible personal property, Baltimore City must make one annual levy on tangible personal property and on that tangible personal property which is assessed or assessable on January first of the tax year. Any such property which is not assessed or assessable on January first cannot be taxed by the City for that year.

On various occasions this Court has held that a county or city to which has been delegated powers to levy annually cannot levy retroactively. *Balto., C. & A. Ry. Co. v. Wicomico County,* 93 Md. 113 held invalid an attempt to retroactively levy for each of three prior years on the ground the County had been given only annual taxing power. The levy for the current year, made after the statutory date mentioned in the applicable statute but within the tax year, was upheld—the

date mentioned being considered directory. *State v. Merryman,* 7 H. & J. 79, 88, decided that a levy in December was too late in face of the statute which required it to be made "on some day between the first of March, and the first of October annually * * *." The Court said that if the date had been intended to be directory the Legislature would have found it sufficient to direct the levy at some day after the first of March within the year, but the specifying of the first of October as the limit restrained the levy to a time before that day. In *Ellicott v. The Levy Court,* 1 H. & J. 359, a mandamus to compel a levy was refused because the date specified in the statute had passed and compliance with the time limit was mandatory. The Court said: "The Act of Assembly directs the money to be levied by a particular day—this is a special authority, and as the time has elapsed, the Court think it would be improper to order the *mandamus,* as the Levy Court would have no authority under the law to make the levy." *Id.* at 360. There were similar refusals to issue the writ of mandamus in *Wells v. Hyattsville,* 77 Md. 125, 142-3, and *Comms. of Pub. Sch. v. Co. Comms.,* 20 Md. 449, because the levy had to be made annually and the time specified for its making had passed.

The City argues that it is not bound by the limitations and restrictions which bind most municipalities because the Legislature has given it taxing powers as broad and sweeping as those of the State—that taxwise it is no longer merely a creature of the State but its equal—and that the decision in *National Can Corp. v. State Tax Comm.,* 220 Md. 418, permits it to ratify assessments the State Tax Commission made for 1958 and 1959.

The City's claim to full sovereignty in local taxation is based on Chap. 27 of the Acts of 1951, which added subsection (33½) to Sec. 6 of the City Charter to provide that the City shall have full power:

"(a) To have and exercise, within the limits of Baltimore City, in addition to any and all taxing powers heretofore granted by the General Assembly of Maryland to the Mayor and City Council of Balti-

more, the power to tax to the same extent as the State of Maryland has or could exercise said power within the limits of Baltimore City as part of its general taxing power; and to provide by ordinance for the imposition, assessment, levy and collection of any tax or taxes authorized by this subsection; and from time to time to grant exemptions and to modify or repeal existing or future exemptions * * *."

These provisions made permanent similar temporary taxing powers which had been granted the City by the Legislatures of 1945 and 1947 in an effort to provide supplements to the revenues from property taxation, which were becoming increasingly inadequate. We read them as granting the City full powers to tax the same things, persons, transactions and acts—the same subjects and objects (with some exceptions which the State expressly reserved to itself in the legislation) —as the State could tax, and not as exempting the City from the uniform State-wide requirements as to procedures and mechanics, including the time within which the powers must be exercised in order to meet the requirements of a balanced budget and conformity with the uniform State-wide procedures.

This same reading of the statutes and similar reasoning underlay the decision in *Kimball-Tyler v. Balto. City, supra.* That case held January first to be the date of finality in the City. If subsection (33½) of Sec. 6—which, the opinion said, gave the City the power to repeal the manufacturers' exemption—gave the City the power to set its own date of finality and its own time of levy, there would have been no reason, as was done, to turn the decision on the fact the City had repealed the exemption before the date of finality and so had made the levy for 1957 operate on property assessable on January 1 of that year. Legislative action subsequent to the passage of subsection (33½) a of Sec. 6 of the City Charter (last re-enacted by Ch. 768 of the Acts of 1953) supports the view that procedural tax freedom was not intended for the City. Section 31(c) of Art. 81 of the Code which, as has been reiterated, prescribes that taxes on all tangible personal

property throughout the State, including Baltimore City, "be levied for the calendar year and as of the first day of January of such year as the date of finality," was reenacted in 1957 by Ch. 578 of the Acts of that year.

Section 32 of Art. 81 which, as has also been previously noted, requires the levy for each year on all property subjected to taxation by Art. 81 (which includes tangible personal property) to be made within four months after the date of finality, was also reenacted in 1957 by Ch. 257 of the Acts of that year. Section 32 in terms includes "the legislative department of the Mayor and City Council of Baltimore." If the Legislature had deemed that subsection (33½) a of Section 6 of the Baltimore City Charter, as enacted in 1951 and reenacted in 1953, had conferred upon the City uninhibited powers as to tax procedures, rather than as to subjects and objects of taxation, it would not in 1957, as we see it, have reenacted Sec. 32 of Art. 81 to specifically require the City to levy within four months of the uniform date of finality, or in that year have reaffirmed the State-wide application of Sec. 31 (c) of Art. 81.

The *National Can* case does not compel, nor even indicate, a contrary result. We upheld there a ratification by the Legislature of assessments by the State Tax Commission which had been made contrary to the controlling statute. The Commission, in its function of assessing, had consistently over recent years differentiated between personal and real property assessments, deducting an amount attributed to inflation in the latter and not in the former, which it assessed at full cash value. In *Sears, Roebuck v. State Tax Comm.*, 214 Md. 550, it was held that real and personal property must both be assessed at full cash value since the statutes treated them alike, and that Sears' personal property assessment must be reduced to the level of real property assessments.

The Legislature thereupon passed Ch. 73 of the Acts of 1958 which recited the *Sears* decision, the intention of the Legislature to classify real and personal property separately to the end that a factor of inflation may be allowed for real property but not for personal property, that most taxpayers had paid personal property taxes on a full assessment and it

would be unfair for undue advantage to accrue to taxpayers who had not paid their taxes by the time of the *Sears* decision, and, finally, that it was the intention of the Legislature "To effectuate the policy of the State Tax Commission and of other taxing authorities of this State as it existed prior to the decision in the Sears case * * *." The operative provisions of the Act, "effective as of January 1, 1957," amended the appropriate statutes by providing for the separate classification for taxation of real and personal property, for assessment of real property subject to deduction for inflationary factors and for assessment of personal property at full cash value.

We held in *National Can* that the intention of the Legislature to ratify the 1957 assessments made by the State Tax Commission and other taxing authorities was clear, and its amendments of the statutes were valid and effective as of January 1, 1957. Distinguishing differences between the legislative action which was approved in *National Can* and Ordinance No. 156 come readily to mind. The Legislature has full inherent and plenary powers in matters of State and local taxation, subject only to constitutional prohibitions and restraints; it could change a date of finality or create a separate date for the purpose of certain taxes, expressly or by necessary implication. The personal property involved in the *National Can* case had been subjected to tax by Code (1957), Art. 81, Sec. 8, had been levied on, and on the date of finality was clearly subject to tax and to assessment. What was ratified was the amount of the assessment. We said in *National Can*, 220 Md. 418, 440:

> "The difficulty in *Sears* stemmed from an administrative practice which was contrary to the requirements of the statute; but, even so, *some* assessment was proper. This, we think, is clear from the decision in *Sears* to remand for the reduction of the assessment; otherwise the tax would have been wholly invalid."

The City Council does not have plenary powers of taxation. It is subject not only to constitutional but to statutory guides and controls which include, as we have said, the necessity for

an annual levy on property assessed or assessable on January first of the tax year. There had been no imposition of tax under Sec. 8 of Art. 81 of the Code since that section in terms does not subject to tax personal property exempt under Sec. 9, as Armco's property was, and no other legislative imposition; there had been no levy since the Ordinances of Levy for 1958 and 1959 levied only on property assessed and assessable on the respective dates of finality, and Armco's property was not on those dates either legally assessed or assessable.

The City contends that the requirements as to the time of levy are directory and therefore Ordinance No. 156 was at least effective to levy a tax on Armco's property for 1959, under the holding of *B., C. & A. Ry. Co. v. Wicomico County, supra,* having been passed within the year. It is true that the dates set out in the ordinances detailing the budget procedures of the City have been held to be directory, *Baltimore City v. Gorter,* 93 Md. 1, but it would seem to have been at least generally assumed, if not judicially said, that the City must levy for the ensuing year before January first of that year. *United States v. Certain Parcels of Land, Etc.,* 61 F. Supp. 164, 170;[1] *Kimball-Tyler v. Balto. City, supra;*[2] and Sec. 32 of Art. 81, specifying a date four months after the date of finality as the latest day a levy can be made, would seem to be a legislative mandate rather than a directive, under the reasoning of *Ellicott v. The Levy Court,* and *State v. Merryman,* both cited above.

If we assume for the argument, without deciding, that the City could levy for 1959 at any time within that year, the short answer to the City's argument that it did so in Ordinance No. 156 is that the ordinance did not even attempt or purport to attempt to impose or to levy a tax. It did not

---

1. Chesnut, J., said: "It is true that the local laws contemplate that an ordinance fixing the rate should be passed in November, but I believe it is not unusual for the City ordinance to be actually delayed to some date prior to January 1st of the next year."

2. Judge Henderson said for the Court: "Since both the assessment and the levy in the instant case were made prior to January 1, [the former as of January 1] and Ordinance No. 643 became effective prior to that date, we think the City's action was timely and effective for the calendar year 1957." *Id.* at 99.

amend any prior ordinance retroactively so as to impose or levy a tax.[3] In terms it ratifies an interpretation of the State Tax Commission as to the intent and meaning of an ordinance contrary to the true intent and meaning of that ordinance as determined by this Court and "deems" that ordinance to have meant what the Tax Commission erroneously thought it meant. The City says Ordinance No. 156, despite its words, in substance and actuality ratified not an interpretation but actions—the assessments made by the State Tax Commission for 1958 and 1959—just as did the act of the Legislature passed on in *National Can.* If the language of the ordinance could be stretched to support this argument (which we think it cannot), there would have been only an assessment for 1959, unsupported by the other two essentials of a valid tax— an imposition and a levy.

We think it clear that the City could not in December 1959 impose a tax on Armco's property for the years 1958 and 1959, and that its effort to accomplish this result by an ordinance ratifying an interpretation of a statute by an administrative body which had assessed property which, at the time, had no legal existence for the purposes of taxation, was likewise beyond its powers and entirely ineffective. The decree ordering the refunds to Armco for 1958 and 1959 will be affirmed.

*Decree affirmed, with costs.*

---

**3.** Significantly, the ordinance did amend the prior ordinances prospectively to impose taxes for 1960 and subsequent years.