THE BOARD OF COUNTY COMMISSIONERS OF
GARRETT COUNTY, MARYLAND ET AL. *v.*
DeCORSEY E. BOLDEN ET AL.

[No. 115, September Term, 1979.]

*Decided April 14, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*H. Russell Smouse* and *Jack R. Turney* for appellants.

*Robert E. Watson* for appellee Ernest J. Gregg, Jr., and by *Thomas B. Dabney, Jr.,* for appellee DeCorsey E. Bolden.

RODOWSKY, J., delivered the opinion of the Court.

When the Board of County Commissioners of Garrett County, Maryland (the "Board") undertook to fix a property tax rate of $2.61 for the taxable year July 1, 1979 — June 30, 1980 which exceeded the "constant yield tax rate" of $2.37, their action was immediately challenged by this taxpayer's suit. The Circuit Court for Garrett County concluded that the Board had failed to comply with applicable statutory procedures and enjoined the Board from enforcing a tax rate in excess of the constant yield tax rate. The Writ of Certiorari was issued prior to decision by the

Court of Special Appeals on the appeal by the Board. We shall here affirm the decree of the circuit court.

The concept of a constant yield tax rate was introduced into the property tax system by Maryland Laws (1977), Ch. 964, now Md. Code (1957, 1975 Repl. Vol., 1979 Cum. Supp.), Art. 81, § 232C. It is that rate which, when applied to the estimated full assessable base as of the date of finality (here January 1, 1979) of the next taxable year (here 1979/1980), will provide the same property tax revenue for the taxing authority as was levied during the current taxable year (here 1978/1979).[1] During May through July, 1979, the period involved in this case, the relevant statutory scheme and provisions are as hereinafter described.[2]

Under § 232C (b) the State Department of Assessments and Taxation, prior to January 15 of each year,[3] "shall notify" each taxing authority, county and municipal, of an estimate of the total assessed value of all real and personal property within its jurisdiction for the next taxable year. The estimated assessable base, after certain exclusions, is to be advertised by the Department in a newspaper of general circulation in each county. The Department is also to notify, presumably after computation, each taxing authority of the constant yield tax rate applicable to it. Section 232C then sets forth the provisions applicable here. They are:

> (c) A taxing authority may not increase the tax rate above the constant yield tax rate ... unless it advertises its intention to impose an increased tax rate.
>
> (d) *A tax rate in excess of the constant yield tax*

---

1. This description is of the basic concept only and is over simplified. No issue is presented here as to the method of calculating the constant yield tax rate.

2. Section 232C was amended by six separate acts of the 1978 session of the General Assembly and by three separate acts of the 1979 session. Of the latter, one Act, Ch. 66, was an emergency measure effective April 10, 1979. None of these amendments are directly relevant to the issues presented here. However, reference to § 232C will be to Code (1957, 1975 Repl. Vol., 1978 Cum. Supp.).

3. Now February 15.

*rate may not be levied until the taxing authority implements the following procedure:*

(1) The taxing authority shall advertise its intent to exceed the constant yield tax rate in a newspaper of general circulation within its jurisdiction sufficient to give notice as determined by the Department. The taxing authority will meet on a day, at a time and place fixed in the advertisement, which shall be approximately 7 days after the day that the advertisement is published, for the purpose of hearing comments regarding any tax rate increase and to explain the reasons for any proposed increase. The advertisement may not be less than 1/4 page in size and the smallest type used shall be 18 point. The advertisement may not be placed in that portion of the newspaper where legal notices and classified advertisements appear . . . . The meeting on the proposed tax rate may coincide with the meeting on the proposed budget of the taxing authority. The hearing shall be held not less than 14 days prior to the date by which property tax rates shall be levied pursuant to the provision contained in a charter, general or local law, or local ordinance.

. . .

(3) The taxing authority, after the public hearing has been held in accordance with the above procedures, may adopt a resolution or ordinance levying a property tax rate in excess of the constant yield tax rate. *If the resolution or ordinance adopting this tax rate is not approved on the day of the public hearing, the day, time and place at which the resolution or ordinance will be scheduled for consideration and approval by the taxing authority shall be announced at the public hearing.* [Emphasis added]

Subsection (h) provides for sending with tax bills the comparison between the tax rate actually adopted and the constant yield tax rate, and sets forth a form for presenting the information.

A Garrett County property tax rate for the fiscal year beginning July 1, 1979 which would exceed the constant yield tax rate was contemplated by the Board. A notice of public hearing was published in the week preceding May 31, 1979 in *The Republican,* a newspaper printed in Oakland. This notice included the following text, in large type:

> Last year's property tax rate was $2.45, and the certified value of all assessable property was $206,937,558. The rate multiplied by the value produced revenues (less discounts) of $4,708,564.
>
> To produce the same revenues as last year (including certain State Aid adjustments), the tax rate would be $2.37. This rate is called the constant yield rate. For this taxable year, the actual property tax rate is $2.66. This rate is $.29 more than the constant yield tax rate and will produce in revenue $619,556 more than produced by the constant yield tax rate.[4]

The notice advised that the public hearing would be held on June 5, 1979 at 1:30 P.M. in the Grand Jury Room, Garrett

---

4. The reference to a tax rate of $2.66 is a combination of a rate of $2.61 and an additional $ .05 for fire departments. Code of the Public Local Laws of Garrett County (Everstein ed., 1971), § 16-1(a) provides that the Board "is authorized and directed to levy annually a tax of five cents per hundred dollars on the assessable property basis in Garrett County, and said levy is to be paid to the Volunteer Fire Departments . . . ." The parties have treated the $2.61 rate as the rate to be compared to the constant yield tax rate of $2.37. The decree enjoins collection at a rate in excess of $2.37 but provides, in a footnote, that the Board "shall give effect to the $ .05 fire department levy." The Board interprets this feature of the decree as meaning that the $ .05 fire department levy is in addition to, and not included within, the $2.37 rate. Appellee Bolden states flatly that "the Fire Department tax is a separate tax." The record does not reflect the manner in which the $2.37 constant yield tax rate was computed by the State Department of Assessments and Taxation. Since the issue is not before us, we shall assume, without deciding, that the $ .05 fire department levy is properly excluded from the $2.37 limit under the decree.

County Courthouse "to present and take testimony on the proposed County Budget . . . ." [5]

The succeeding events were the subject of the following findings of fact by the Chancellor which are not challenged in any material respect:

[T]he hearing was convened as advertised on June 5, 1979, in the Grand Jury Room, but shortly thereafter was recessed by the Commissioners because of an unexpected large audience. It was announced to those assembled that the hearing would resume on June 11, 1979, at 7:30 P.M. at Garrett Community College. The hearing was continued at the College at the date and time announced. [T]he Commissioners did not adopt or approve a resolution or ordinance adopting the proposed tax rate at the hearing, or that day . . . . There was no announcement of the day, time and place at which such resolution or ordinance would be scheduled for consideration and approval . . . . It was further established that no notice of the day, time and place at which the resolution or ordinance was scheduled for consideration or approval was ever given.

On June 19, 1979, at a regular meeting of the Board, a tax rate of $2.61 was in form established. [6]

The present action was filed on June 29, 1979 by Appellee, DeCorsey E. Bolden. [7] In addition to suing the Board, as a municipal corporation, the complaint joined as defendants Truman E. Paugh, H. Lester Hunter and Ernest J. Gregg, Jr., who are the members of the Board, and the county

---

5. The Board had previously published notices of the June 5, 1979 public hearing in each of the two weeks before May 24, 1979. However, these notices made no mention of the constant yield tax rate.

6. Counsel for the Board at argument advises that it is not the practice for the agenda of the Board to be published or reported in newspapers.

7. Appellee Bolden is a member of the House of Delegates from the First Legislative District. The record below and his brief in this Court make plain that he supported constant yield tax rate legislation.

treasurer.[8] Undoubtedly spurred by the suit, the Board undertook to fortify its position and caused to be published in *The Republican* in the week before July 5, 1979 a notice that it would conduct a public hearing on July 10, 1979 "for the purpose of ratifying the tax rate, which had been established at a regular meeting of the County Commissioners on June 19, 1979 . . . at a level of $2.61 . . . with an additional $ .05 per $100.00 for Fire Departments." The Board, by its majority, on July 10, 1979 again set a tax rate of $2.61.

Appellees challenged below, and challenge here, every step of the process followed in fixing the tax rate.[9] The trial court held that the June 19, 1979 adoption of a tax rate was invalid because of a failure to state at the conclusion of the public hearing on June 11, 1979, the day, time and place at which the tax rate resolution would be scheduled for consideration and approval, and that the July 10 attempted ratification was ineffective under Article 81, § 32, because the tax rate was not fixed before July 1, 1979. We agree with the Chancellor that it is unnecessary to review each of the Appellees' points of challenge, and shall address ourselves to the issues which were the ground of decision below.

The power of a board of county commissioners to fix the property tax rate is derived from the General Assembly. *See, e.g., Schneider v. Landsdale,* 191 Md. 317, 61 A.2d 671 (1948); Md. Code (1957, 1973 Repl. Vol.), Art. 25, § 20. Section 232C of Art. 81 has clearly limited the exercise of that power, since a "tax rate in excess of the constant yield

---

**8.** All actions of the Board taken to fix a tax rate in excess of the constant yield tax rate was by majority vote. The majority consists of Commissioners Paugh and Hunter. Commissioner Gregg has taken pains in the court below and here to disassociate himself from the action of the majority. No appeal was noted by Commissioner Gregg, individually. However, a brief has been filed in this Court on behalf of Commissioner Gregg, as an *appellee.* That brief advises that Commissioner Gregg was designated an appellee in the Court of Special Appeals. No challenge to this procedure is presented and we do not intimate whether or not it is recognized under the Maryland Rules.

**9.** Commissioner Gregg, appearing as an appellee in this Court, moved to dismiss the appeal essentially on the ground that its prosecution was not authorized by valid Board action. Since we shall affirm, there is no need to rule on the motion.

tax rate may not be levied until the taxing authority implements" the procedure set forth in subsection (d). The Garrett County Board did not announce at the public hearing of June 11 "the day, time and place at which the resolution or ordinance [would] be scheduled for consideration and approval" by it. § 232C(d)(3). It is contended by the Board, however, that this provision is merely directory, or, alternatively, that there has been substantial compliance.

Here, the obvious purpose of § 232C is to focus public attention from one year to the next on the interrelationship between the rate of property tax and the assessable basis in a period of rising property values. In the constant yield tax rate presentation the property tax revenue element of the equation is held constant so that the factor of a rising assessable basis is reflected in the reduced, or constant yield, rate. Thus, if the proposed rate for the forthcoming taxable year is the same dollars per hundred as the current year's rate, the comparison to the constant yield rate enables taxpayers more readily to determine that the tax rate has *effectively* increased and that increased property taxes are not exclusively due to increases in assessed valuations. In order for a taxing authority to exceed the constant yield rate, there must be newspaper notice of this intent in advance of a public hearing. Certainly one purpose of this notice and of the public hearing is to afford taxpayers the opportunity to be heard with respect to proposed appropriations and revenue estimates which, in combination, will cause the constant yield property tax rate to be exceeded.

If the tax rate is not approved on the day of the public hearing, § 232C (d) (3) states that the day, time and place at which the rate will be scheduled for consideration and approval "shall be announced at the meeting." We assume solely for purposes of addressing the Board's argument that the manner of giving notice, *i.e.,* by announcement, and that the time of giving notice, *i.e.,* at the public hearing, are directory only. *But see In Re: James S.,* 286 Md. 702, 410 A.2d 586 (1980); *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979); and *Johnson v. State,* 282 Md. 314,

384 A.2d 709 (1978). We shall further assume, as the Board argues, that no right is conferred, by § 232C, on taxpayers to be heard again at the subsequent meeting. However, in the face of the rather detailed procedures for adopting a tax rate in excess of the constant yield rate which permeate § 232C, we cannot read out of the statute the requirement that *some notice* be given of the subsequent meeting. It is of the essence of the last sentence of § 232C(d)(3) that taxpayers be advised of the target date, time and place for rate adoption so that those who support or oppose the proposed increase may further marshal public opinion and bring it to bear on the taxing authorities. Here, the Board failed to give any notice prior to fixing the tax rate on June 19, 1979. We conclude that, at a minimum, the taxing authority *must* give some reasonable notice of its meeting at which the rate is scheduled for consideration and approval.[10]

The effect of the failure by the Board to comply with the procedural requirements of § 232C was that a property tax rate in Garrett County of $2.37 per hundred was in effect no later than midnight of June 30, 1979 for the 1979/1980 taxable year. This result obtained under one or the other of two theories. A choice need not be made between them for the present decision. Section 232C imposes limitations on the exercise of taxing power by taxing authorities, but the result of the violation of its requirements presented here need not be that the action of the Board on June 19, 1979 was a complete nullity. The action of the Board in attempting to establish a rate of $2.61 can be viewed as effective up to the

---

10. *Cf.* Opinion of the Attorney General of Maryland (Sept. 10, 1979) (Rules Service Co. at 1979-217). The Attorney General opined that the City of Cumberland complied substantially and, thereby, effectively with § 232C (d) (3). The Attorney General distinguished the trial court opinion in the case at bar as follows:

... City officials in Cumberland apparently publicly indicated that the constant yield hearing of April 24 was not the final act in increasing the rate and stated that another hearing would be held. Although the time and place of the meeting setting the rate was not announced at the April 24 hearing, citizens were told that these details would be announced. More importantly, actual notice (albeit just several days) of the date, time, and place of the meeting when the tax rate was to be set was given by way of newspaper stories. [*Id.* at 1979-222].

legislatively imposed ceiling of the constant yield tax rate. On this analysis the legal consequence of the Board's action on June 19 was to adopt a rate of $2.37.

The analysis of the Chancellor was that the action of June 19, 1979 was a total nullity and thus there was no tax rate established by the Board prior to July 1, 1979. The trial court then turned to Art. 81, § 32 which states:

> As soon as may be practicable after the date of finality in each year and in any event before the first day of July next following the county council or county commissioners of each county . . . shall fix the rate of county . . . taxation for such ensuing year on all assessments, persons or property subject to taxation under this article in such county . . . and for which the rate is not fixed by this article . . . provided that where any fixed or limited rate of county . . . taxes is prescribed by this article, such county . . . taxes are hereby levied at such respective rates upon all assessments, persons and property liable thereto under the provisions of this article, and it shall not be necessary for the county commissioners of any county . . . to pass a resolution or ordinance levying the same.

Since the trial court considered the constant yield tax rate as a "limited rate," prescribed by Art. 81, it concluded that the rate of $2.37 was in effect by operation of § 32.

The Board next argues that any procedural defect was cured by the notice published in the week prior to July 5, 1979 and by the resolution adopted on July 10, 1979. Appellees argue, and the trial court held, that effect to the Board's July 10 action is precluded by the provision of Art. 81, § 32 under which county commissioners shall fix the rate of county taxation "in any event before the first day of July next following" the date of finality. The Board rejoins by contending that the quoted provision is directory. In addressing this contention we shall continue to assume that the requirements for notice of a subsequent meeting in § 232C (d) (3) are satisfied by substantial compliance and we

shall assume that the newspaper notice of the July 10 meeting was substantial compliance.

On the issue of the interpretation of § 32 the Board emphasizes, by reference to 1A Sutherland, STATUTORY CONSTRUCTION, § 25.03 at 299-300 (4th ed. C. Sands 1972) that "the essence of the thing to be done," the levy, was done on July 10 and that the non-compliance relates only to the July 1 time limit which should not be considered mandatory but as established merely with a view to orderly conduct of the public business. Among the many decisions cited by the Board in support of this proposition, two decisions of this Court require discussion.

*State ex rel. County Commissioners of Baltimore County v. Horner,* 34 Md. 569 (1871) discussed the time for making the annual levy in the context of claims against a surety on a tax collector's bonds. The surety demurred to the declaration on the ground that it failed to allege the times when the levies had been made for each of the years 1864-1866 which were involved. For 1864, local law provided that the County Commissioners of Baltimore County "shall levy the State and county taxes for said county on or before the first day of March in each year." 2 Md. Code, Public Local Laws (1860), Art. 3, § 65.[11] Judgment for the surety, based upon sustaining the demurrer, was reversed on the ground that "the statutory directions as to the time of making the levy . . . are directory only, with respect to the particular day on which the duty is to be performed." 34 Md. at 574.

The second case involved the charter of the City of Havre de Grace. Section 321 provided that the "Mayor and City Council shall annually, before the first day of July, levy . . . for the current fiscal year . . . ." An invalid levy of June 1, 1925 was held to have been validated by an ordinance passed May 17, 1926 on the ground that the fiscal year of Havre de Grace was July 1 through June 30 and because "the validating ordinance was passed within the year succeeding the date of the levy to which it referred . . . ." *Mayor of Havre de Grace v. Bauer,* 152 Md. 521, 528, 137 A. 344, 347 (1927).

---

11. The date was changed to the first day of May by Chapter 96 of the Acts of 1865.

As a result of the general revision of the tax laws by Chapter 226 of the Acts of 1929, which was based upon the Report of the Maryland Tax Revision Commission of 1928, in view of *State Tax Commission v. Armco Steel Corporation,* 226 Md. 533, 174 A.2d 327 (1961), and the revisions of Art. 81 by Chapter 825 of the Acts of 1963, we do not believe *Horner, Havre de Grace* and similar cases [12] are precedents which control the interpretation of Maryland Code (1957, 1975 Repl. Vol., 1978 Cum. Supp.), Art. 81, § 32.

Prior to Chapter 226 of the Acts of 1929, the public general laws provided that the state tax on property, at rates prescribed by the General Assembly, be levied by county commissioners, as a purely ministerial act,[13] and placed a time limitation on the county commissioners with respect to this levy of the state tax. *See* Md. Code (1924 Bagby Ed.), Art. 81, § 34.[14] The date, if any, by which county property taxes were to be levied was a matter of local law. The situation is described in the Final Report of the Maryland Tax Revision Commission (December 19, 1928) at *ix* as follows:

> It would be impossible to reduce to any co-ordinated system the existing mass of confused tax laws unless a uniform tax year should be established throughout the State. At present, the levy-dates and dates on which the taxable status becomes fixed for the ensuing year, vary in almost every county. In some counties, there seems to be

12. *E.g.,* Baltimore, Chesapeake & Atlantic Ry. v. County Commissioners of Wicomico County, 93 Md. 113, 48 A. 853 (1901).

13. Final Report, Maryland Tax Revision Commission xi (Dec. 19, 1928).

14. The statute provided:

It shall be the duty of the county commissioners of the several counties ... annually, on or before the third Tuesday of April, to impose the state taxes prescribed by law; and if the county commissioners of any county ... shall fail to impose the said taxes before the first day of July in any year, the clerk of the said county commissioners ... shall give notice thereof to the governor, within twenty days after such failure, and thereupon the governor shall appoint a tax board of three persons in the county ... so failing, a majority of whom shall have power to act, and whose duty it shall be forthwith to levy said taxes....

> great doubt and difference of opinion as to the date
> on which county taxes are first payable or in
> arrears, and as to the beginning and the end of the
> tax year.

One object of the 1929 revision was to encourage a transition to a uniform tax year, the calendar year. Another object was to eliminate the "solemn ceremony" by which county commissioners levied the state property tax. *Id.* at ix-xii. The report also recommended, with respect to the local levy, that it "take place as soon as practicable after the date of finality, but in any event before the first day of the year for which the taxes are levied." *Id.* at xi.

This latter recommendation became section 29 of Chapter 226 of the Acts of 1929. Thus, the essential features of present § 32 of Art. 81 came into the Public General Laws, as reflected by Md. Code (1924, 1929 Supp.), Art. 81, § 29 which read in part:

> As soon as may be practicable after the date of
> finality in each year and *in any event before* the
> first day of the third succeeding month the County
> Commissioners of each county . . . *shall* fix the rate
> of county . . . taxation for such ensuing year . . . .
> [Emphasis added].

There was no occasion for this Court to discuss the statute which is today § 32 of Art. 81 until the *Armco* decision, *supra,* in 1961. The uniform statewide date of finality for tangible personal property was January 1 and Baltimore City's taxable year was the calendar year. The ordinance of levy for 1959 had been enacted in December 1958. Armco's ores were exempt as of January 1, 1959. By an ordinance adopted December 18, 1959 the City had repealed the exemption, and thereby it contended Armco Steel Corporation's ores were taxable, at least for tax year 1959. Judge Hammond, writing for the court, rejected a claim that Baltimore City had full sovereignty in local taxation, and stated it was not exempt "from the uniform State-wide requirements as to procedures and mechanics, including the time within which the powers must be exercised in order to

meet ... 'conformity with the uniform State-wide procedures." 226 Md. at 545, 174 A.2d at 333. It was stated that Art. 81, § 32 "requires the levy for each year on all property subjected to taxation by Art. 81 ... to be made within four months after the date of finality . . . ." *Id.* at 546, 174 A.2d at 333. Property exempt on the date of finality could not be reached by a retroactive repeal of the exemption.

The City then argued that the December 1959 ordinance was a levy, passed during the then current tax year, and was thus effective. In rejecting that argument we said:

> [I]t would seem to have been at least generally assumed, if not judicially said, that the City must levy for the ensuing year before January first of that year, [cit. om.] and Sec. 32 of Art. 81, specifying a date four months after the date of finality as the latest day a levy can be made, would seem to be a *legislative mandate* rather than a directive, under the reasoning of *Ellicott v. The Levy Court,* [1 H. & J. 359 (1802)] and *State v. Merryman* [7 H. & J. 79 (1826)] . . . . [*Id.* at 548, 174 A.2d at 335 (emphasis added)].

The case of *State v. Merryman* was a suit on the bond of a tax collector. The levy involved, which included the ordinary county charges, had been made on December 20, 1811. It was contended by the surety that under the Act of 1794, Ch. 53, the Levy Courts were required to act between the first of March and the first of October, annually. Judgment for the surety was affirmed. The reasoning of *Merryman,* as described in *Armco,* was "that if the date had been intended to be directory the Legislature would have found it sufficient to direct the levy at some day after the first of March within the year, but the specifying of the first of October as the limit restrained the levy to a time before that day." *State Tax Commission v. Armco Steel Corp., supra,* 226 Md. at 544, 174 A.2d at 332.

The principles of statewide uniformity in the ordinary tax system referred to in *Armco* have become even more binding

as a result of Chapter 825 of the Acts of 1963. Section 2 of the Act provided that "[I]n no event later than June 30, 1966 . . . the appropriate authorities of each county . . . shall . . . complete such changes . . . as are necessary to assure conformity with this Act with respect to the uniform statewide fiscal year, taxable year, date of finality, *date of levy,*[15] due date and date for being in arrears . . . ." (Emphasis added). The uniform fiscal and taxable year was made July 1-June 30 and January 1 the date of finality for the state and for every county, incorporated city or town, and taxing district. Art. 81, § 29A. The date by which the local rate shall be fixed "in any event," under § 32, was changed to the first day of July next following the date of finality. Section 48 (a) of Art. 81 was amended to provide that all ordinary state, county, municipal and taxing district taxes "are due and payable without interest as of the first day of July in each taxable year . . . ."

Chapter 825 also amended local laws. Section 15 of the Act, applicable to Garrett County local laws, changed, *inter alia,* the date "on or before" which the "County Commissioners shall fix the rate of county taxation" from the fifteenth day of January to the thirtieth day of June for the fiscal year of July 1-June 30. Code Of Public Local Laws Of Garrett County (Everstein ed., 1971), § 9-6.

We cannot accept the Board's contention that it could fix the tax rate for fiscal year 1980 at any time up to June 30, 1980. Rather, the requirement of fixing the rate of county taxation under Art. 81, § 32 before the first day of July (1979) was intended by the General Assembly to be mandatory. Thus, whether the action taken on July 10, 1979 by the Board in the instant matter be viewed as an attempted ratification or an attempted supplemental levy, it is ineffective.

*Decree affirmed; appellants to pay the costs.*

---

**15.** Ch. 825 of the Acts of 1963 for the first time added to Article 81 a definition of "levy" as § 2 (20b). It means ". . . the *formal imposition of property taxes, at a certain fixed rate on assessed valuation,* and the doing of whatever is necessary to authorize the collection of these taxes."